[Cite as *Baskin v. Baskin*, 2017-Ohio-7632.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ANTHONY T. BASKIN | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27373 |
| | : | |
| v. | : | T.C. NO. 14-DR-295 |
| | : | |
| TERRI L. BASKIN | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___15th___ day of _____September_____, 2017.

. . . . . . . . . .

CHARLES W. SLICER, III, Atty. Reg. No.0059927, 426 Patterson Rd., Kettering, Ohio 45419
        Attorney for Plaintiff-Appellant

TERRI L. BASKIN, 3379 Shiloh Springs Road, Apt. 6, Trotwood, Ohio 45426
        Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1}  Anthony Baskin appeals from a final judgment and decree of divorce of the Montgomery County Court of Common Pleas, Domestic Relations Division, which ordered him to pay spousal support to Terri Baskin in the amount of $550 per month for

93 months. For the following reasons, the judgment of the trial court will be affirmed.

**{¶ 2}** The Baskins were married in 1989, and Mr. Baskin filed a complaint for divorce in March 2014. The Baskins have no children. They entered an agreement with respect to many aspects of their divorce, but they could not agree on the issue of spousal support. The trial court conducted a hearing on this issue on August 1, 2016. The court subsequently issued a decision with respect to spousal support, which was incorporated into the divorce decree. The final judgment and decree of divorce was issued on November 15, 2016.

**{¶ 3}** The evidence presented by the parties with respect to spousal support was as follows:

**{¶ 4}** Mr. Baskin was retired from Delphi, and the parties agreed on the coverture fraction that represented Mrs. Baskin's share of his retirement benefits. Pursuant to this calculation, Mrs. Baskin received approximately 20% of Mr. Baskin's retirement benefits: Mr. Baskin's annual retirement benefit was $15,907, of which he received $12,726, and Mrs. Baskin received $3,181. Mr. Baskin, who was age 65 at the time of the hearing, also received Social Security income of $19,270 per year. Mrs. Baskin, who was age 55 at the time of the hearing, received Social Security Disability of $11,976 per year. Thus, Mr. Baskin's annual income was $31,996, and Mrs. Baskin's annual income was $15,157. Both parties had high school educations.

**{¶ 5}** The parties also generally agreed on the distribution of their real and personal property. Mr. Baskin was awarded the marital home and a car and accepted responsibility for some debts, and Mrs. Baskin assumed several other store and credit card debts. They agreed to hold the other harmless on any debt owed on the properties

and/or accounts each was awarded. Mr. Baskin agreed to pay Mrs. Baskin $476 in payment for the household goods that were not specifically distributed to one of the parties. Mr. Baskin was in Chapter 13 bankruptcy at the time of the divorce, and the debt on the house and car, as well as some debts from cash advance sites, had been incorporated into his payment plan, which extended over five years.

{¶ 6} Mr. Baskin testified that he pays $1,075 per month toward his bankruptcy and that, when those payments began, he had approximately the same amount left each month for his other expenses. However, he acknowledged that his income had increased by approximately $5,000 per year since he filed for bankruptcy, that he no longer has some of the expenses he had at the time of his bankruptcy filing, and that his eligibility for Medicaid would decrease his medical expenses. He testified that he did not want the divorce (although he filed the complaint), which created the parties' financial hardship, and that he could not afford to pay spousal support.

{¶ 7} At the time of the hearing, Mrs. Baskin lived in a one-bedroom apartment with her service dog. She testified that, due to a variety of conditions, she was unable to work and had not worked since very early in the parties' marriage. She also had recently broken her hip and femur. She testified that she struggles to pay her bills and sometimes cuts back on food to make ends meet.

{¶ 8} Based on this evidence, the trial court concluded that Mr. Baskin should pay to Mrs. Baskin $550 per month for 93 months. In arriving at this amount, the trial court stated that it "was appropriate to reduce the spousal support approximately $100 per month" because some marital debts had been included in the Chapter 13 bankruptcy, for which Mr. Baskin was making the payments. These spousal support payments,

amounting to $6,600 per year, did not equalize the parties' incomes, but they reduced the discrepancy in the parties' incomes to approximately $3,600 per year.

{¶ 9}  Mr. Baskin raises one assignment of error, which asserts that the trial court abused its discretion in awarding spousal support.

{¶ 10}  In determining whether spousal support is appropriate and reasonable, as well as its amount, nature, and duration, a trial court must consider a variety of factors. These factors include: the parties' income from all sources; their relative earning abilities; their ages and physical, mental, and emotional conditions; the retirement benefits of the parties; the duration of the marriage; the extent to which it would be inappropriate for a party to seek employment outside the home (particularly if a custodian of a minor child of the marriage); the parties' standard of living during the marriage; their relative educations; the parties' relative assets and liabilities; the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment; the tax consequences, for each party, of an award of spousal support; and the lost income production capacity of either party that resulted from that party's marital responsibilities.   R.C. 3105.18(C)(1).   The court may also consider any other factor that it expressly finds to be relevant and equitable.   R.C 3105.18(C)(1)(n).

{¶ 11} Mr. Baskin argues on appeal that the trial court only "vaguely" addressed the parties' relative assets and liabilities and their ages and physical, mental, and emotional conditions, and thus that it abused its discretion in awarding spousal support.

{¶ 12} We disagree with Mr. Baskin that the trial court only "vaguely" considered the parties' assets and liabilities. The court addressed their incomes with great specificity. With respect to assets and liabilities, it was clear from the testimony that Mr. Baskin was awarded the most significant assets (the house and car), although the value of and/or equity in these items was not specified by either party; in light of this distribution, it was not patently unfair that he should be ordered to pay the remaining debt on these items through his bankruptcy. Both parties assumed some of the parties' debts. The parties' assets and debts were distributed pursuant to their agreement, which was read into the record, and both parties indicated their satisfaction with this distribution. Because the parties reached an agreement regarding the distribution of their assets, there was little reason for the trial court to specifically discuss or delve into this matter in its judgment.

{¶ 13} There is no basis in the record to conclude that there was any significant disparity in the parties' distribution of the assets and liabilities. Moreover, the trial court's award of spousal support specifically took into account that Mr. Baskin was paying some debts on martial property through the bankruptcy; the trial court reduced spousal support by $100 per month on this basis. We cannot conclude that the trial court failed to adequately consider the parties' assets and liabilities.

{¶ 14} Mr. Baskin also argues that the trial court only "vaguely" addressed the parties' ages and physical, mental, and emotional conditions, and that it did not address lost income production due to "marital responsibilities." Mr. Baskin does not make any argument as to how the trial court failed to consider the parties' ages or physical, mental, and emotional conditions. Both testified to physical ailments that prevented them from

working at the time of the hearing; it was clear from the testimony that Mrs. Baskin's physical limitations had existed throughout most of the marriage. It is not apparent that this factor would or should weigh in Mr. Baskin's favor on the issue of spousal support.

{¶ 15} Mr. Baskin also points out that he testified that he "balanced [his] time" when he was working to allow for "time with my family" and to help Mrs. Baskin when she was sick. However, he did not testify or provide any other evidence that this "balancing" of his time reduced his income at the time or in his retirement. As such, we cannot find that the trial court should have given greater weight to this testimony.

{¶ 16} Finally, Mr. Baskin states in his brief that he "believed that [Mrs. Baskin] is receiving financial support from an [sic] non-related male." No evidence was offered to support this assertion, and when Mrs. Baskin was questioned about it, she denied it. The trial court found that Mrs. Baskin "receives no financial assistance from anyone else." We cannot conclude that the trial court should have given greater weight to this claim – which the trial court apparently did not find to be credible -- in determining spousal support.

{¶ 17} Mr. Baskin's assignment of error is overruled.

{¶ 18} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Charles W. Slicer, III
Terri L. Baskin
Hon. Timothy D. Wood